# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MARATHON PETROLEUM )
CORPORATION; SPEEDWAY LLC; )
MARATHON PREPAID CARD LLC; and )
SPEEDWAY PREPAID CARD LLC; )
                                  )    Case No. 1:16-cv-00080-LPS
       Plaintiffs, )
                                    )
     v. )
                                    )
THOMAS COOK, in his capacity as the )
Secretary of Finance for the State of )
Delaware; DAVID M. GREGOR, in his )
capacity as the State Escheator of the State )
of Delaware; and MICHELLE M. )
WHITAKER, in her capacity as the Audit )
Manager for the State of Delaware, )
                                  )
       Defendants. )
                                  )
                                  )

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(B)(6)

Jennifer R. Noel (No. 3987)
Caroline Lee Cross (No. 3489)
Delaware Department of Justice
Department of Finance
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

Steven S. Rosenthal (*Pro Hac Vice*)
Tiffany R. Moseley (*Pro Hac Vice*)
J.D. Taliaferro (*Pro Hac Vice*)
LOEB & LOEB LLP
901 New York Avenue NW
Washington, D.C. 20001

*Counsel for Defendants Thomas Cook, David M. Gregor, and Michelle M. Whitaker*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ..................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 1

STATEMENT OF UNDISPUTED FACTS .......................................................................... 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.      PLAINTIFFS' COMPLAINT IS AN IMPERMISSIBLE PRE-
        ENFORCEMENT CHALLENGE TO DEFENDANTS' UNCLAIMED
        PROPERTY EXAMINATION ................................................................................. 6

II.     FEDERAL COMMON LAW PRIORITY RULES DO NOT PRE-EMPT
        DELAWARE'S RIGHT TO CONDUCT AN EXAMINATION TO
        CONFIRM PLAINTIFFS' COMPLIANCE WITH DELAWARE'S
        ESCHEAT ACT ....................................................................................................... 9

        A.      The *Texas* Cases Deal with Substantive Allocation of Escheat Proceeds
                Between States ............................................................................................. 10

        B.      No Implication Drawn From the *Texas* Cases Limits A State's Audit
                Authority Over Subsidiaries of Domiciliary Corporations .......................... 13

III.    DEFENDANTS' EXAMINATION OF PLAINTIFFS' COMPLIANCE WITH
        DELAWARE'S ESCHEAT ACT DOES NOT VIOLATE THE FOURTH
        AMENDMENT. ....................................................................................................... 15

CONCLUSION ..................................................................................................................... 17

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967)..................................................................................6

*Am. Express Travel Related Servs. Co., Inc. v. Sidamon-Eristoff,*
   755 F.Supp. 2d 556 (D.N.J. 2010), *aff'd sub nom N.J. Retail Merchants,* 669
   F.3d 374 (3d Cir. 2012) .............................................................................13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................5

*Ass'n of Am. Med. Colls. v. United States,*
   217 F.3d 770 (9th Cir. 2000) ....................................................................7

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................................5

*Blanchette v. Conn. Gen. Ins. Corp.,*
   419 U.S. 102 (1974)..................................................................................6

*Chao v. Community Trust Co.,*
   474 F.3d 75 (3d Cir. 2007) .......................................................................16

*City of Los Angeles v. Patel,*
   135 S. Ct. 2443 (2015)..............................................................................16

*Delaware ex rel., French v. Card Compliant LLC,*
   Case No. N13C-06-289 (Del. Sup. Ct. Nov. 23, 2015) ...........................15

*Delaware v. Bennett,*
   697 F. Supp. 1366 (D. Del. 1988)..............................................................6

*Delaware v. New York,*
   507 U.S. 490 (1993)...............................................................2, 11, 12, 13

*E.E.O.C. v. Franklin & Marshall College,*
   775 F.2d 110 (3d Cir. 1985) .....................................................................17

*Evanston Ins. Co. v. Layne Thomas Builders, Inc.,*
   635 F. Supp. 2d 348 (D. Del. 2009)...........................................................5

*Fowler v. UPMC Shadyside,*
   578 F.3d 203 (3d Cir. 2009) ......................................................................5

*Mobil Exploration & Producing U.S., Inc. v. Dep't. of Interior*,
  180 F.3d 1192 (10th Cir. 1999) ...................................................................6

*N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*,
  669 F.3d 374 (3d Cir. 2012) ...............................................................9, 10

*Oklahoma Press Publ'g Co. v. Walling*,
  327 U.S. 186 (1946).........................................................................16

*Papasan v. Allain*,
  478 U.S. 265 (1986)..........................................................................5

*Pennsylvania v. New York*,
  407 U.S. 206 (1972)...............................................................*passim*

*Resnik v. Woertz*,
  774 F. Supp. 2d 614 (D. Del. 2011)........................................................5

*Temple-Inland, Inc. v. Cook*,
  82 F. Supp. 3d 539 (D. Del. 2015)...................................................12, 13

*Texas v. New Jersey*,
  379 U.S. 674 (1965).........................................................2, 10, 11, 12

*Torres v. Allen Family Foods*,
  672 A.2d 26 (Del. 1995) ...................................................................8

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950)........................................................................16

*Univ. of Med. & Dentistry of N. J. v. Corrigan*,
  347 F.3d 57 (3d Cir. 2003) .........................................................7, 9, 16

*Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*,
  424 F.3d 840 (8th Cir. 2005) ..............................................................9

**Statutes**

10 *Del. Code* § 341 and § 343 ...............................................................4

12 *Del. Code* § 1101, *et seq.*................................................................1

12 *Del. Code* § 1155 ...........................................................8, 14, 15, 16

12 *Del. Code* § 1156(j-l) ......................................................................4

12 *Del. Code* § 1209 ............................................................................3

73 *Del. Code* § 73-403.........................................................................8

12 U.S.C. §§2501-03 ......................................................................................................11

28 U.S.C. § 1251(a) .......................................................................................................12

**Other Authorities**

58 Del. Laws Ch. 426 (1972)............................................................................................3

Fed. R. Civ. P. 12(b) ...............................................................................................1, 3, 5

Fed. R. Civ. P. 12(h)(3) ..................................................................................................5

United States Constitution, Fourth Amendment................................................*passim*

## NATURE AND STAGE OF PROCEEDINGS

Under Delaware's Escheats Law, 12 *Del. Code* § 1101, *et seq.* (commonly referred to as the "UPL"), the value of certain abandoned or unclaimed property escheats to the State, which holds it in trust for the owner in perpetuity.  On May 31, 2007, the Delaware State Escheator commenced an audit of Marathon Oil Corporation, its subsidiaries and related entities.  That audit is still under way.

On February 11, 2016, Marathon Petroleum Corporation ("Marathon"), Speedway LLC ("Speedway"), Marathon Prepaid Card LLC ("MPPC") and Speedway Prepaid Card LLC ("SPPC") (collectively "Plaintiffs") sued the state officials involved in the escheat process – Secretary of Finance Thomas Cook, Delaware State Escheator David M. Gregor, and Audit Manager Michelle M. Whitaker (collectively "Defendants").  D.I. 1.  The Complaint alleges that Delaware's conduct of the audit is preempted by Federal common law and violates the Fourth Amendment to the U.S. Constitution.

On February 19, 2016, the parties agreed to a Standstill, pursuant to which Defendants, pending a final order from this Court, agreed not to pursue any further examination of, or to request information related to, Plaintiffs' stored value gift card programs, or to take any action against Plaintiffs for the escheat of unredeemed gift cards and/or gift certificates.  D.I. 11.

Defendants now move to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## SUMMARY OF ARGUMENT

Plaintiffs seek declaratory and injunctive relief preventing Defendants from examining the books and records of Plaintiffs to determine if a unclaimed property liability is owed to Delaware.  First, Plaintiffs allege that Delaware's right to examine the books and records of Plaintiffs is pre-empted by federal common law developed in a series of cases establishing

priority rules allocating unclaimed property among States with competing claims.   Second, Plaintiffs allege that Defendants' examination violates their rights under the Fourth Amendment to the U.S. Constitution.   For the reasons given below, Plaintiffs' claims are an impermissible pre-enforcement challenge to Defendants' unclaimed property examination and are not ripe for judicial review.   As a result, this Court lacks subject-matter jurisdiction over Plaintiffs' claims. Second, and in the alternative, Plaintiffs have failed to state a claim upon which relief can be granted.

The Supreme Court's three escheat cases – *Texas v. New Jersey*, 379 U.S. 674 (1965), *Pennsylvania v. New York*, 407 U.S. 206 (1972), and *Delaware v. New York*, 507 U.S. 490 (1993) (collectively referred to as the *Texas* cases) – created federal common law priority rules for the escheat of unclaimed intangible personal property and stated that these priority rules apply to disputes among two or more states for the same property.   However, these priority rules are separate and distinct from Delaware's right to examine a company's records to determine if Delaware's UPL has been complied with.   There are any number of possible circumstances in which a Delaware corporation may transfer escheatable property to, or maintain escheatable property in, a non-Delaware entity that would not prevent the escheat of the property to Delaware.   Such transfers or maintenance of escheatable property may be found evasive or fraudulent under the UPL.   Delaware is, therefore, authorized to examine the books and records of Delaware entities and their subsidiaries and affiliates to determine the facts and circumstances surrounding the entities' UPL compliance.

Prior to completion of the examination, since the facts are unknown, any dispute over Delaware's power to escheat is not ripe.   If Marathon continues to refuse to produce documents voluntarily, Delaware's only remedy to enforce production of documents is to file an action to

enforce the examination in the Delaware Court of Chancery. At that time, Marathon can present the claims it raises here to the Court of Chancery. Since Marathon has a pre-enforcement remedy available to it, the claims it raises here are unripe.

## STATEMENT OF UNDISPUTED FACTS

Defendants dispute many of the assertions in Plaintiffs' Complaint, not least of which is Plaintiffs' assertion that Delaware began its review of Plaintiffs' gift cards "nine years into [the] audit," D.I. 1 at ¶ 1, or that Delaware only requested information related to Plaintiffs' gift card programs in April 2015. *Id.* at ¶ 68-69. To the contrary, Delaware issued repeated requests for information related to Plaintiffs' gift card programs over the pendency of the audit. Nevertheless, resolution of these disputed facts is not required to grant Defendants' motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Moreover, accepting as true all of the allegations in the Complaint, Plaintiffs have still failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

A few undisputed facts are required to resolve the motion to dismiss for lack of subject matter jurisdiction:

1.     At least since 1972, the UPL has permitted the State Escheator to require production for examination of such books, records or papers reasonably necessary for the State Escheator to determine whether a report of unclaimed property was required. See Declaration of Jennifer R. Noel ("Noel Decl."), Ex. A (58 Del. Laws Ch. 426 (1972) (adopting 12 *Del. Code* § 1209)) ("the State Escheator may petition the Court of Chancery for an order requiring [a person who the State Escheator has reason to believe has failed to report property] to produce for examination, at a reasonable time and place, such of his books, records or papers as are reasonably necessary for the State Escheator to determine whether a report was required.").

2.      The current provisions of the UPL provide that Delaware may "at reasonable times and upon reasonable notice examine the records of **any person or business association or organization** to determine whether the person has complied with any provision of" the UPL. D.I. 1 at ¶ 21 (citing 12 *Del. Code* § 1155) (emphasis added).

3.      Kelmar Associates LLC is the contract auditor that is performing the unclaimed property examination of Plaintiffs commenced by Delaware by letter dated May 31, 2007. D.I. 1 at ¶ 44.

4.      Plaintiff Marathon, f/k/a MPC Holdings, Inc., is a corporation organized under the laws of Delaware. D.I. 1 at ¶ 5.

5.      Marathon Petroleum Company LP, f/k/a Marathon Petroleum Company LLC ("MPC LP"), is a subsidiary of Marathon. D.I. 1 at ¶ 38.  MPC LP is a limited partnership organized under the laws of Delaware. Noel Decl., Ex. D.

6.      Plaintiff MPPC is a limited liability company organized under the laws of Ohio. D.I. 1 at ¶ 7.  MPC LP is the sole member of MPPC. *Id.*

7.      Plaintiff Speedway, f/k/a Speedway SuperAmerica LLC, is a limited liability company organized under the laws of Delaware. *Id.* at ¶ 6.

8.      Plaintiff SPPC is a limited liability company organized under the laws of Ohio. *Id.* at ¶ 8.  Speedway is the sole member of SPPC. *Id.*

9.      Under 10 *Del. Code* § 341 and § 343, the Delaware Court of Chancery has jurisdiction to hear all cases in equity and to grant injunctions.  The Court of Chancery further has jurisdiction over escheat matters generally.  *See* 12 *Del. Code* § 1156(j-l).  Delaware has previously filed actions in the Court of Chancery to enforce examination summonses.  Noel Decl. ¶ 4, Ex. B.

## LEGAL STANDARD

The contention that a matter is not ripe for review is a facial challenge to the court's subject matter jurisdiction brought under Fed. R. Civ. P. 12(b)(1). *Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 352 (D. Del. 2009). If the court lacks subject-matter jurisdiction, the court shall dismiss the action. *See* Fed. R. Civ. P. 12(h)(3). When, as is true here, "a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Resnik v. Woertz*, 774 F. Supp. 2d 614, 627 (D. Del. 2011) (internal quotations and citation omitted).

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), the complaint must set forth facts that raise a "plausible inference" that the defendant inflicted a legally cognizable harm upon the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (explaining that a plaintiff must "identify[] facts that are suggestive enough to render [his claim] plausible"). Conclusory allegations of liability do not suffice and courts must disregard "formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 681. Additionally, while a court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant, legal conclusions receive no such deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (cited with approval in *Twombly*, 550 U.S. at 555 (citations omitted)). When the complaint does not permit a court "to infer more than the mere possibility of misconduct," the pleader is not entitled to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

<u>**ARGUMENT**</u>

I.    **PLAINTIFFS' COMPLAINT IS AN IMPERMISSIBLE PRE-ENFORCEMENT CHALLENGE TO DEFENDANTS' UNCLAIMED PROPERTY EXAMINATION**

This Court "must determine whether the issues are ripe for decision in the 'Case or Controversy' sense." *Blanchette v. Conn. Gen. Ins. Corp.*, 419 U.S. 102, 138 (1974). Further, to the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, "the Court must determine whether to exercise that restraint and cannot be bound by the wishes of the parties." *Id.*

The ripeness doctrine serves to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). It "permits courts to refrain from issuing premature or unnecessary decisions." *Delaware v. Bennett*, 697 F. Supp. 1366, 1370 (D. Del. 1988). When a party seeks pre-enforcement relief from an agency action, the party's challenge will be ripe only if (1) the issues are purely legal; (2) the issues are based on final agency action; (3) the controversy has a direct and immediate impact on the plaintiff; and (4) the litigation will expedite final resolution rather than delay effective agency enforcement. *Id.* Plaintiffs' challenge to an unclaimed property examination fails to satisfy these requirements.

When judicial enforcement is required for a government entity to obtain information, whether through an audit or a summons, a pre-enforcement challenge to the government's information request is quintessentially non-final and not ripe for review. *See Mobil Exploration & Producing U.S., Inc. v. Dep't. of Interior*, 180 F.3d 1192, 1200 (10th Cir. 1999) ("Where an agency must resort to judicial enforcement of its subpoenas, courts generally dismiss anticipatory actions filed by parties challenging such subpoenas as not being ripe for review because of the

availability of an adequate remedy at law if, and when, the agency files an enforcement action."
(quoting *In re Ramirez*, 905 F.2d 97, 98 (5th Cir. 1990))).

Audits, by their very nature, demand further factual development and are therefore not a final agency action. Audits are a process, one that may change over time, and "[c]ourts should hesitate to scrutinize decisions to initiate administrative audits and investigations." *Univ. of Med. & Dentistry of N. J. v. Corrigan*, 347 F.3d 57, 70 (3d Cir. 2003). In *Corrigan*, the Third Circuit recognized that "[t]he decision to investigate is normally seen as a *preliminary* step—non-final by definition—leading toward the possibility of a 'final action' in the form of an enforcement or other action." *Id.* at 69; *see also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) (internal citations omitted) ("[A]udits themselves do not impose an obligation, deny a right, or fix some legal relationship as a *consummation* of the administrative process. . . .   An investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action.").

Delaware's conduct of an unclaimed property examination of Plaintiffs is insufficient to support a finding of finality necessary for pre-enforcement review by a federal court. Furthermore, the only burden placed on Plaintiffs is the cost of compliance with the examination, which is insufficient to constitute a direct or immediate impact for purposes of finality. *See Corrigan*, 347 F.3d at 70.   Should Plaintiffs continue to refuse to produce the information requested by Delaware's auditor, Delaware must bring an action for judicial enforcement of its records request in Delaware state court.

Most companies prefer to voluntarily comply with document requests made by the State's outside auditor.  However, their voluntarily submissions to document requests do not mean that

there is no judicial oversight of the process if a holder declines to cooperate.  It also does not mean that the State Escheator lacks subpoena power.

Plaintiffs are simply incorrect when they assert, that there is no pre-enforcement review of a summons.  D.I. 1 at ¶¶ 4(b), 24, 73, 99.  To the contrary, the Complaint cites the very language that provides for summonses.  D.I. at 1 ¶ 23 (*citing* 12 *Del. Code* § 1155).  "[T]he power to issue subpoenas is an integral part of the administrative process," *Torres v. Allen Family Foods*, 672 A.2d 26, 32 (Del. 1995), and the State Escheator possesses that power.  12 *Del. Code* § 1155(a) explicitly states that the Escheator "**may by summons** require the attendance of any person having knowledge in the premises, and may take testimony and **require proof material for the investigation**." (emphasis added).  The Court of Chancery, as the Delaware court with authority over escheat matters, likewise has the authority to oversee and enforce summonses issued by the State Escheator.  *See, e.g.*, 73 *Del. Code* § 73-403.  If a holder, as is apparently the case with Plaintiffs here, does not want to voluntarily submit to an unclaimed property examination, then the State Escheator has the power to issue a summons for "proof material" for the examination.  If Plaintiffs still decline to comply with the summons, then the State Escheator must file an application in the Court of Chancery to enforce that summons.  Plaintiffs can respond in the Court of Chancery and thereby receive an opportunity to be heard on any legal contention they are entitled to raise.  If, at the completion of that process, the Court of Chancery enforces the summons, the holder must comply with the summons.  At that point, having been heard by the Court of Chancery, there could be no possible argument that Plaintiffs had been denied due process.[1]

---

[1] In a similar case, the Eighth Circuit found that the target of an audit failed to allege more than hypothetical injury, and therefore lacked standing, where the target had received letters that

Many of Plaintiffs' individual claims are based on speculation regarding how the audit process might unfold.   For example, Plaintiffs claim that "the IDR [information document request] creates uncertainty regarding the scope of Defendants' authority to claim property by escheat that the *Texas Cases* do not permit."   D.I. 1 at¶ 85.   However, Delaware has not even concluded what, if any, escheat of unredeemed gift cards would be required under Delaware law. Thus, all of Plaintiffs' claims that relate to the audit of unredeemed gift cards are unripe and therefore must be dismissed for lack of subject matter jurisdiction Fed. R. Civ. P. under 12(b)(1) for the reason that Plaintiffs have not been, and may never be, subjected to a liability for these unredeemed gift cards.[2]

## II.   FEDERAL COMMON LAW PRIORITY RULES DO NOT PRE-EMPT DELAWARE'S RIGHT TO CONDUCT AN EXAMINATION TO CONFIRM PLAINTIFFS' COMPLIANCE WITH DELAWARE'S ESCHEAT ACT

Plaintiffs assert that Marathon Pre-Paid Card LLC and Speedway PrePaid Card LLC "are outside of Delaware's jurisdiction under the *Texas Cases*."   D.I. 1 at ¶ 1.   Plaintiffs further claim that, based on the *Texas* cases and a Third Circuit case, *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374 (3d Cir. 2012), "Delaware lack[s] standing to claim unredeemed gift cards issued by MPPC and/or SPPC."   D.I. 1 at ¶ 73.   Plaintiffs then make a leap from those cases to the assertion that an *audit* of non-Delaware entities violates the federal common law cases.   D.I. 1 at ¶ 95.   To the contrary, the *Texas* cases do not discuss unclaimed property audits, place no limits on such audits, and relate solely to the rules by which unclaimed property is allocated among the States.

---

authorized the auditor to examine the company. *See Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 844 (8th Cir. 2005).

[2] This is true even if the decision to audit the unredeemed gift cards were sufficiently final to confer subject matter jurisdiction on this Court—which it is not.  *See Corrigan*, 347 F.3d at 69.

### A.   The *Texas* Cases Deal with Substantive Allocation of Escheat Proceeds Between States

To understand why Plaintiffs fail to state a preemption claim, a brief discussion of the *Texas* trilogy of cases is necessary.

In the first case, *Texas v. New Jersey*, 379 U.S. 674, 680-82 (1965), the Supreme Court established two priority rules to resolve conflicts among states over unclaimed intangible property.  As explained in *N.J. Retail Merchants*:

> When a property is deemed abandoned, the first opportunity to escheat the property belongs to the State of the last known address of the creditor, as shown by the debtor's books and records. . . .  We refer to this as the primary rule. If the primary rule fails because there is no record of any address for a creditor or because the creditor's last known address is in a State which does not provide for the escheat of abandoned property, the secondary rule gives the right to escheat to the State in which the debtor is incorporated until another state comes forward with proof that it has a superior right to escheat.

669 F.3d at 392 (*citing Texas*, 379 U.S. at 682) (internal quotations omitted).

In the second case, *Pennsylvania v. New York*, 407 U.S. 206 (1972), Pennsylvania proposed that for transactions where the debtor did not keep records showing the address of the creditor, "the [s]tate of origin of the transaction," *i.e.*, the state of the place of purchase, should have the right to escheat the abandoned property, rather than the state of the debtor's domicile as was required under the second priority rule in *Texas*. *Id.* at 213-14.  The Supreme Court rejected this alternative by noting that "the [proposed] place-of-purchase . . . rule[] might permit intangible property rights to be 'cut off or adversely affected by . . . a forum having no continuing relationship to any of the parties . . . '" to the transaction. *Id.* at 213.  The Court also

held that the state of purchase had insufficient ties to the creditor or debtor to justify giving it the right to escheat.[3]

In the third case, *Delaware v. New York*, 507 U.S. 490 (1993), New York sought to a) have unclaimed dividends, interest and other distributions made by issuers of securities to financial intermediaries for the benefit of shareholders escheat to New York based on the address of the intermediaries, *id.* at 495, and to b) apply statistical analysis (rather than actual addresses from the debtors' books and records) to establish the last known address of creditors and thus escheat under the primary rule. *Id.* at 508. The Supreme Court concluded that "intermediaries who hold unclaimed securities distributions in their own name are the relevant 'debtors'' under the secondary rule of *Texas* and *Pennsylvania*," and unclaimed moneys held by such intermediaries could escheat under the primary rule to the state of the creditor's last known address or, under the secondary rule, to the state of incorporation of the intermediary. *Id.* at 504-05. It further refused "to adopt New York's proposal for statistical analysis of creditors' addresses under the primary rule." *Id.* at 509. Instead, it held that "New York can [only] establish by reference to debtors' records that the creditors who were owed particular securities distributions had last known addresses in New York." *Id.*

These three decisions have one common theme – they all deal with the allocation of unclaimed property among the States. The following statements from these three cases make this point clear:

- "[W]e are faced here with the . . . problem of deciding which State's claim to escheat is superior to all others." *Texas*, 379 U.S. at 679.

---

[3] The principles outlined in *Pennsylvania* were later modified, in part, by federal statute. *See* 12 U.S.C. §§2501-03.

- "[I]t becomes our responsibility in the exercise of our original jurisdiction to adopt a rule which will settle the question of which State will be allowed to escheat this intangible property." *Id.* at 677.

- The Supreme Court's priority rules are "fundamentally a question of ease of administration and of equity. We believe that the rule we adopt is the fairest, is easy to apply, and in the long run will be the most generally acceptable to all the States." *Id.* at 683.

- "[C]ontroversies among different States over their right to escheat intangibles could be settled only in a forum 'where all the States that want to do so can present their claims for consideration. . . .'" *Pennsylvania*, 407 U.S. at 209-10 (*citing Western Union Telegraph Co. v. Pennsylvania*, 368 U.S. 71, 79 (1961).

- "We think that as a matter of fairness the claimant States, and not Western Union, should bear the cost of finding and recording the available addresses, and we shall remand to the Special Master for a hearing and recommendation as to the appropriate formula for distributing those costs." *Pennsylvania*, 407 U.S. at 215.

- "In this original action, we resolve another dispute among States that assert competing claims to abandoned intangible personal property." *Delaware*, 507 U.S. at 494.

- "These [priority] rules arise from our 'authority and duty to determine for [ourselves] all questions that pertain' to a controversy between States . . . and no State may supersede them by purporting to prescribe a different priority under state law." *Delaware*, 507 U.S. at 500 (citing *Kentucky v. Indiana*, 281 U.S. 163, 176 (1930)).

In each of these three cases, two or more states were asserting claims to the same corpus of intangible personal property. In addition to the above language from the decisions, it is noteworthy that each of the cases arose in the context of the Supreme Court's original jurisdiction. *Delaware*, 507 U.S. at 494. 28 U.S.C. § 1251(a), under which these cases were brought, provides that "[t]he Supreme Court shall have original and exclusive jurisdiction of all controversies between two or more States."

Moreover, another judge in this District, in addressing a similar preemption argument, determined that the *Texas* trilogy of cases is inapplicable to disputes between holders and states. In *Temple-Inland, Inc. v. Cook*, Judge Robinson dismissed the plaintiff's preemption argument:

The court finds that, consistent with the stated purpose of the priority scheme in *Delaware* to "resolve disputes among States," the *Texas* Cases apply to disputes among States, not to disputes between private parties and States. Although relevant case law on the topic of escheat law is sparse, such a finding is in accord with a number of state court opinions addressing the applicability of the Texas Cases. *See Riggs Nat'l Bank of Wash., D.C. v. District of Columbia*, 581A.2d 1229, 1245 (D.C. Ct. App.1990) (the *Texas* Court was "not confronted with, nor did it decide, the relative rights of abandoned property as between a private holder and a State"); *New Jersey v. Chubb Corp.*, 570 A.2d 1313 (N.J. Super. 1989) (the Texas guidelines "relate only to conflicts among states"); *O'Connor v. Sperry & Hutchinson Co.*, 379 A.2d 1378, 1381 (Pa. Commw. Ct. 1977) ("It is apparent in our view that the Court meant its rule to be binding only where there were multiple claims to the same property."), *aff'd*, 412 A.2d 539 (1980).

*Temple-Inland, Inc. v. Cook*, 82 F. Supp. 3d 539, 549-50 (D. Del. 2015). The *Texas* cases have no application to the scope of Delaware's authority to audit for UPL compliance. As a result, the first count of Plaintiffs' Complaint should be dismissed for failure to state a claim.[4]

**B.    No Implication Drawn From the *Texas* Cases Limits A State's Audit Authority Over Subsidiaries of Domiciliary Corporations**

None of the *Texas* majority opinions contain a single reference to state audits of holders or state review of holders' records for UPL compliance. The dissent in *Pennsylvania* contains the briefest of references to "examination" of money order addresses, but that reference is only to

---

[4] Plaintiffs' citation of language from *Pennsylvania* and *Delaware* for the proposition that a state cannot adopt an escheat law that creates a different set of priority rules, D.I. 1 at ¶ 2, 34, does not affect this conclusion. In *Pennsylvania v. New York*, 407 U.S. 206, 216 n.8 (1972), the Supreme Court noted that, "[i]nsofar as the invocation of any provision of the Revised Uniform Disposition of Unclaimed Property Act would be inconsistent with this decree, the decree prevails." That statement is obviously correct and is simply a statement that a state may not enact a law making a claim to unclaimed property that would be contrary to the *Texas* cases. In *Delaware v. New York*, 507 U.S. 490, 500 (1993), the Court concluded that "[t]hese [priority] rules arise from our 'authority and duty to determine for [ourselves] all questions that pertain' to a controversy between States . . . and no State may supersede them by purporting to prescribe a different priority under state law." *Id.* (citing *Kentucky v. Indiana*, 281 U.S. 163, 176 (1930)). In *Am. Express Travel Related Servs. Co., Inc. v. Sidamon-Eristoff*, 755 F.Supp. 2d 556, 608 (D.N.J. 2010), *aff'd sub nom N.J. Retail Merchants*, 669 F.3d 374), the State of New Jersey sought to establish a different set of priority rules for certain categories of property. None of this language purports to limit a state's audit authority.

the cost of performing the review. 407 U.S. at 219. The *Texas* cases, therefore, do not restrict in any fashion Delaware's ability to audit companies for property escheatable to Delaware.

Plaintiffs speak in broad generalities about what they claim the *Texas* cases stand for. D.I. 1 at ¶ 2, 34. They have asserted, in conclusory fashion, that "only Ohio has standing to claim unredeemed gift cards under the secondary rule of the priority rules," D.I. 1 at ¶ 92, and that "[t]o the extent any of those purchases [by intermediate marketing entities] resulted in unclaimed property, only Illinois or Michigan have standing to claim that property, not Delaware." D.I. 1 at ¶ 93. However, none of the *Texas* cases place any limitation on Delaware's ability to audit a subsidiary of a Delaware corporation to identify any property that may be due and owing to Delaware.

To the contrary, the Delaware examination statute explicitly allows for the examination of the records "of **any person or business association or organization** to determine whether the person has complied with any provision of" the UPL. 12 *Del. Code* §1155 (emphasis added). No statement in the *Texas* cases limits this general power.

This proceeding is neither the time nor the place for Delaware to describe all of the possible circumstances in which a Delaware corporation may use a wholly-owned and controlled out-of-state subsidiary to park unclaimed property in a manner which would constitute evasion or fraud under Delaware's UPL. Indeed, Delaware cannot be expected to anticipate all of the arrangements or contrivances that fertile minds can create to evade its ability to trace and secure the return of unclaimed property to its rightful owner or the State. That is the purpose of the examination: to determine the relevant facts and, once determined, to conclude whether the relevant facts render a Delaware domiciliary liable under the UPL, with any determination subject to judicial review by the Delaware courts. It is certainly neither sufficient nor

appropriate for the auditee to decide for itself what it deems to be relevant to that examination and decide that Delaware is not entitled to conduct its own examination to uncover additional facts and to verify the facts proffered by the subject of the examination.

In a recent case, brought as a *qui tam* action, it is alleged that defendants had "concocted a scheme to transfer unclaimed money to a sham, non-Delaware company in order to keep it for themselves." *See* Noel Decl., Ex. C (*Delaware ex rel., French v. Card Compliant LLC*, Case No. N13C-06-289 (Del. Sup. Ct. Nov. 23, 2015)).   In denying a motion to dismiss, the Superior Court identified the following as the potentially viable legal basis for recovery by Delaware:

> [T]he outcome [of the case] turns on whether the Retailers can avoid escheat by using contracts with a non-Delaware company, creating the illusion that the non-Delaware company has assumed a Delaware Retailer's debt and is 'holding' the Delaware company's abandoned property outside Delaware and the escheator's reach.   This, even though, the abandoned property (the unused gift cards' proceeds) remains in Delaware and the Delaware Retailers remain liable for the debt.

*Id.* at 1.  Again, Delaware does know not whether circumstances such as these are present in this case or whether other circumstances are present which could also give rise to potential liability under the UPL.  At this stage it is undertaking an examination to determine the facts, and, as a result, Plaintiffs can have no possible claim that Delaware's actions are preempted by federal law and should therefore be dismissed under Fed. R. Civ. R. 12(b)(6).

## III.   DEFENDANTS' EXAMINATION OF PLAINTIFFS' COMPLIANCE WITH DELAWARE'S ESCHEAT ACT DOES NOT VIOLATE THE FOURTH AMENDMENT.

Even if this Court were to reach the merits of Plaintiffs' claims, Plaintiffs cannot rightly allege that Defendants' unclaimed property examination pursuant to § 1155 violates Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures.

Agency examinations such as the unclaimed property examination of Marathon are subject to well-established precedent governing subpoenas, originating in *United States v.*

*Morton Salt Co.*, 338 U.S. 632 (1950), and *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946).  The government's authority to request and examine documents is necessarily broad because "[t]he only power that is involved . . . is the power to get information from those who best can give it and who are most interested in not doing so."  *Morton Salt*, 338 U.S. at 642.  In fact, "an agency ordinarily 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'"  *Corrigan*, 347 F.3d at 64 (*quoting United States v. Powell*, 379 U.S. 48, 57 (1964)).

Any corresponding judicial review is therefore "strictly limited."  *Id.* (*quoting FTC v. Texaco*, 555 F.2d 862, 871-72 (D.C. Cir. 1977) (*en banc*)).  Accordingly, in order for an document request to survive constitutional scrutiny, only a low threshold must be satisfied: "(1) the inquiry must be within the authority of the agency, (2) the demand for production must not be too indefinite, and (3) the information sought must be reasonably relevant to the authorized inquiry."  *Chao v. Community Trust Co.*, 474 F.3d 75, 79 (3d Cir. 2007).[5]

Here, the document requests are clearly authorized by statute.  Section 1155 permits the State Escheator to "examine the records of any person or business association or organization to determine whether the person has complied with any provision of [UPL]."  12 *Del. Code* § 1155.  Plaintiffs allege that Defendants' "IDR creates uncertainty regarding whether MPPC and SPPC are required to escheat to Delaware."  D.I. 1 at ¶ 101.  This supposed "uncertainty" is not

---

[5] Plaintiffs make several references to *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2451-2452 (2015); which they assert stands for the proposition that a search without "pre-compliance review" violates the Fourth Amendment.  See D.I. 1 at ¶¶ 4(b), 98, 104.  *Patel* is completely irrelevant to the case at hand.  In *Patel*, failure to provide access to a hotel's guest registry was itself subject to criminal sanction.  135 S. Ct. at 2451-52.  The Delaware unclaimed property law provides for no civil or criminal sanction for failure to respond to a request for examination of records.  Failure to respond necessitates Delaware securing a summons, and if necessary, enforcing that summons in the Delaware Court of Chancery.  *See Section I, supra.*

sufficient to support the argument that that the request is somehow unauthorized or that a mere request for documents violates the Fourth Amendment.

Plaintiffs must allege facts demonstrating that the documents sought by Defendants have no possible relevance to Defendants' examination. Plaintiffs have not done this. In considering the relation between a document request to an agency's investigative authority, "relevancy" is construed very broadly. *See, e.g., E.E.O.C. v. Franklin & Marshall College*, 775 F.2d 110, 116 (3d Cir. 1985). Here, the IDR requests documents related to Marathon's issue and redemption of gift cards – all necessary for assessing Marathon's past unclaimed property reporting practices. The IDR requests were well within the broad parameters of permissible inquiry in a UPL compliance audit.

Accordingly, because Plaintiffs fail to allege with specificity how Defendants' examination is unauthorized and how the document requests have no relevance to Defendants' examination authority, Plaintiffs' Fourth Amendment claim should be dismissed under Fed. R. Civ. R. 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted for lack of ripeness and failure to present a legally viable claim.

Dated:  May 16, 2016

Respectfully submitted,

Steven S. Rosenthal
Tiffany R. Moseley
J.D. Taliaferro
*Pro Hac Vice*
LOEB & LOEB LLP
901 New York Avenue NW
Washington, D.C. 20001
Telephone: (202) 618-5000
Facsimile: (202) 618-5001
E-mail:
    srosenthal@loeb.com
    tmoseley@loeb.com
    jtaliaferro@loeb.com

Marc S. Cohen
*Pro Hac Vice*
LOEB & LOEB LLP
10100 Santa Monica Boulevard
Suite 2200
Los Angeles, CA 90067
Telephone:  (310) 282-2000
Facsimile:  (310) 282-2200
E-mail:
    mscohen@loeb.com

By:  */s/ Jennifer R. Noel*
    Jennifer R. Noel (No. 3987)
    Caroline Lee Cross (No. 3489)
    Department of Finance
    Carvel State Office Building
    820 North French Street
    Wilmington, DE 19801
    T: (302) 577-8842
    Email:  Jennifer.Noel@state.de.us

    *Counsel for Defendants*