# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARATHON PETROLEUM CORPORATION; SPEEDWAY LLC; MARATHON PREPAID CARD LLC; and SPEEDWAY PREPAID CARD LLC, | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 16-80-LPS |
| THOMAS COOK, in his capacity as the Secretary of Finance for the State of Delaware; DAVID M. GREGOR, in his capacity as the State Escheator of the State of Delaware; and MICHELLE M. WHITAKER in her capacity as the Audit Manager for the State of Delaware, | : : : : : : : : | |
| Defendants. | : | |

R. Eric Hutz, REED SMITH LLP, Wilmington, DE
Diane Green-Kelly, REED SMITH LLP, Chicago, IL

      Attorneys for Plaintiffs.


Caroline Lee Cross, Jennifer R. Noel, Delaware Department of Justice, Wilmington, DE

      Attorneys for Defendants.


John D. Taliaferro, Steven Rosenthal, Tiffany R. Moseley, LOEB & LOEB LLP, Washington, DC
Marc S. Cohen, LOEB & LOEB LLP, Los Angeles, CA

      Attorneys for Defendant Thomas Cook.


## MEMORANDUM OPINION


September 23, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.    INTRODUCTION

On February 11, 2016, Plaintiffs Marathon Petroleum Corporation ("Marathon"), Speedway LLC ("Speedway"), Marathon Prepaid Card LLC ("MPC"), and Speedway Prepaid Card LLC ("SPC," and collectively "Plaintiffs") filed a complaint ("Complaint") against Defendants Thomas Cook, in his capacity as the Secretary of Finance for the State of Delaware; David M. Gregor, in his capacity as the State Escheator of the State of Delaware; and Michelle M. Whitaker, in her capacity as the Audit Manager for the State of Delaware (collectively, "Defendants").  (D.I. 1)  The Complaint alleges that Delaware's Unclaimed Property Law, Del. Code Ann. tit. 12, § 1101 (2016) ("DUPL"), "violates and is preempted by federal common law." (*Id.* ¶¶ 1, 95)  It further alleges that Defendants' actions pursuant to the DUPL have violated Plaintiffs' rights under the Fourth Amendment of the United States Constitution.  (*See id.* ¶¶ 1, 104)

On May 16, 2016, Defendants filed a motion to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and for failure to state a claim.  (D.I. 20)  The Court heard oral argument on the motion on August 10, 2016.  (Transcript (D.I. 33) ("Tr."))  After the hearing, the Court ordered supplemental letter briefing on the impact, if any, of the decision of another judge of this Court in *Plains All American Pipeline, L.P. v. Thomas Cook*, 2016 WL 4414773 (D. Del. Aug. 16, 2016).  (*See* D.I. 34)

For the reasons that follow, the Court will grant Defendants' motion.

1

## II.    BACKGROUND[1]

Escheat is a procedure through which "a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears." *Texas v. New Jersey*, 379 U.S. 674, 675 (1965). Delaware's escheat law authorizes the State Escheator to claim unclaimed property and to conduct examinations of companies' books and records. *See generally* Del. Code Ann. tit. 12, § 1155 (2016).

Plaintiffs Marathon and Speedway are organized under Delaware law. (*See* D.I. 1 ¶¶ 5-6) In May 2007, Defendants began an audit of Marathon and Speedway's records in order to determine whether these entities had complied with Delaware's escheat law. (*See id.* ¶ 44) Using Kelmar Associates, LLC ("Kelmar"), an auditing firm, as their agent, Defendants requested "voluminous detailed financial records" covering a period of 35 years. (*Id.* ¶¶ 44-46)

At first, Plaintiffs cooperated with Defendants' audit. (*See id.* ¶ 46) Using documents produced in the audit by Marathon and Speedway, Defendants eventually issued a report "estimating a liability for unredeemed gift certificates in the amount of $8,231,049.20 for the period 1986 through 2000, even though gift certificates were issued [only] in 1987 through November 1999." (*Id.* ¶ 56 (emphasis omitted)) In response to this report, Plaintiffs wrote to Defendant Whitaker, Delaware's Audit Manager, to protest the estimate and to draw Defendants' attention to records showing that "no estimation was warranted or authorized." (*Id.* ¶¶ 63-64) In response, rather than revising their estimate, Defendants expanded the audit and requested "extensive detailed information" relating to the gift card business of MPC and SPC. (*Id.* ¶ 69) In

---

[1]This recitation is based, as it must be at this stage, on taking as true all well-pleaded factual allegations in the Complaint.

response to this request, Plaintiffs produced documents to show that MPC and SPC are not Delaware entities but are, instead, Ohio limited liability companies. (*Id.* ¶ 70) Plaintiffs produced these documents in order to "show[] that Delaware lacks standing to claim any unredeemed gift cards, even if any exist." (*Id.*)

As a consequence of not receiving all of the documents Defendants sought relating to MPC and SPC (*see id.* ¶¶ 70-71, 73), Plaintiffs were sent a letter from Kelmar, which threatened enforcement action (*see* D.I. 23 at 1-2). The letter stated that continued failure to comply with the document request "will result in the Office [i.e., the State Escheator] referring the matter to the Attorney General's Office for consideration of enforcement action." (D.I. 1-2 Ex. A at 1)

Plaintiffs further allege: "The Attorney General is currently prosecuting a lawsuit against eighty-six defendants, including seventeen Delaware incorporated companies, under the Delaware False Claims Act seeking treble damages and attorneys' fees and costs, for failure of the Delaware incorporated entities to escheat unredeemed gift cards issued by third-party special purposes entities organized in other states." (D.I. 1 ¶ 76) (citing *State ex rel. French v. Card Compliant, LLC*, 2015 WL 11051006 (Del. Super. Ct. Nov. 23, 2015))

Shortly after receiving the letter from Defendants, Plaintiffs filed their Complaint. In it, they allege that Defendants' actions and the DUPL are preempted by and in violation of federal common law and that Defendants' document requests constitute an unreasonable search in violation of the Fourth Amendment. (*See id.* ¶¶ 94, 104) Defendants seek declaratory and injunctive relief. (*See id.* ¶¶ 95, 105)

## III.   LEGAL STANDARDS

### A.      Failure to State a Claim Under Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all well-pleaded factual allegations of the complaint.  *See Spruill v.*

*Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  "The issue is not whether a plaintiff will ultimately

prevail but whether the claimant is entitled to offer evidence to support the claims."  *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation

marks omitted).  Thus, the Court may grant such a motion to dismiss only if, after "accepting all

well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to

plaintiff, plaintiff is not entitled to relief."  *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000)

(internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

right to relief above the speculative level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  "The complaint must state enough facts to raise a reasonable expectation that discovery

will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson v. New Media*

*Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

When evaluating a complaint, the Court may consider any documents or exhibits attached to or

4

associated with the complaint. *See* Fed. R. Civ. P. 10(c); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**B.     Lack of Subject Matter Jurisdiction and Ripeness Under Rule 12(b)(1)**

In order for a federal court to exercise jurisdiction over a case, the case must be "ripe" for review. *See Thompson v. Borough of Munhall*, 44 F. App'x 582, 583 (3d Cir. Aug. 13, 2002); *see also Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994); *Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 352 (D. Del. 2009) (explaining that challenge to ripeness is "facial challenge to subject matter jurisdiction"). The purpose of the ripeness doctrine "is to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

Courts within the Third Circuit consider three factors when deciding whether an action is ripe for adjudication: "(1) the adversity of the parties' interests; (2) the probable conclusiveness of a judgment; and (3) the practical utility of judgment to the parties." *Evanston Ins. Co.*, 635 F. Supp. 2d at 352-53 (citing *Step-Saver Data Sys. Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (indicating that

action for declaratory judgment is ripe if "the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). A case is not ripe unless all three factors are present. *See Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

In order to establish adversity of interests, plaintiffs must show that they will suffer actual harm if they do not obtain relief. *See Step-Saver*, 912 F.2d at 647. This harm or threat of harm "must remain real and immediate throughout the course of the litigation." *Presbytery*, 40 F.3d at 1463 (internal quotation marks omitted). If the alleged harm involves "uncertain and contingent events," then the parties are not sufficiently adverse. *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001).

The question of conclusiveness hinges on whether the issues in dispute are "purely legal," or "whether further factual development would be useful." *Id.* "A declaratory judgment granted in the absence of a concrete set of facts would itself be a 'contingency,' and applying it to actual controversies which subsequently arise would be an exercise in futility." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) (internal quotation marks omitted). However, "if a future event is certain to occur," then declaratory judgment is appropriate. *Travelers Ins. Co.*, 72 F.3d at 1155 (internal quotation marks omitted).

Finally, the question of the utility of a judgment hinges on whether a decision in the case would "be of some practical help to the parties." *Id.* In deciding whether a decision would provide utility, courts consider the hardship the parties would experience in the absence of a decision. *See NE Hub*, 239 F.3d at 342.

When considering challenges to ripeness under Rule 12(b)(1), courts apply the same standards that are used to resolve a motion under Rule 12(b)(6). *See Evanston Ins. Co.*, 635 F. Supp. 2d at 352. This means that the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in favor of Plaintiffs. *See NE Hub*, 239 F.3d at 341. The Court's inquiry is limited to the allegations made in the Complaint, any attached documents, and matters of public record. *See Evanston Ins. Co.*, 635 F. Supp. 2d at 352.

## IV.    DISCUSSION

Defendants' motion to dismiss presents three issues: ripeness, the sufficiency of Plaintiffs' preemption claim, and the sufficiency of Plaintiffs' Fourth Amendment claim. As explained below, the Court agrees with Plaintiffs that the parties' disputes are ripe for resolution, but agrees with Defendants that the Complaint fails to state plausible claims for preemption or for violations of the Fourth Amendment.

### A.      Ripeness

In order for a claim to be ripe, Plaintiffs must stand to suffer an actual or imminent injury if its requested declaratory judgments are not granted. While the factors that go into a ripeness determination are well established, *see Step-Saver*, 912 F.2d at 647, "it is difficult to define the contours of the ripeness doctrine with precision," *id.* at 646. As a result, the Court's inquiry in each case depends on the specific facts alleged and the context in which the case is situated. *See id; see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("The difference between an abstract question and a 'controversy' . . . is necessarily one of degree. . . . [T]he question in each case is whether the facts alleged, ***under all the circumstances***, show that there is a substantial controversy. . . ." (emphasis added)).

7

Viewed in context, under all the circumstances, the facts alleged in Plaintiffs' Complaint are sufficient to render the parties' disputes ripe for adjudication. The Court agrees with Plaintiffs that they are suffering a real harm due to Defendants' actions. All three of the requirements for a ripe dispute – adversity of the parties' interests, probable conclusiveness of a judgment, and utility of a judgment to the parties – are present here.

First, Plaintiffs are suffering real harms and their interests are adverse to those of Defendants. While Plaintiffs are not currently the subject of an enforcement action, the aggressive and persistent nature of Defendants' audit, in conjunction with Defendants' letter threatening referral to the Attorney General, place Plaintiffs in a difficult position. They can either cooperate with an intrusive, lengthy, and potentially insatiable audit, or they can resist the audit and risk an "enforcement action" from the Attorney General and, potentially, large penalties. *See Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 148 (3d Cir. 2000) (explaining that threats of penalties can constitute injury). Millions of dollars of funds Plaintiffs are currently using for operating expenses are implicated by how Plaintiffs resolve this dilemma. (*See* Tr. at 47 (Plaintiffs' counsel stating her clients "have been using these funds to run their business"); D.I. 27 at 2 ("[T]he threat of injury is disrupting [Plaintiffs'] businesses due to the continuing uncertainty of what is escheatable to Delaware . . . and the threat of continually accruing penalties and interest as this nine-year audit continues without end, despite no findings of material or systemic noncompliance. . . .")

Important in understanding the reality of the adversity between the parties is the wider context in which their conflict arises. Plaintiffs' feud with Defendants is not an isolated incident. Many challenges to Delaware's escheat procedures have been moving through courts. This

8

reality, and the outcomes of some of those cases, further support a conclusion that the case before the Court is ripe.

In *Temple-Inland, Inc. v. Cook*, another judge of this Court considered a case involving the same Defendants and what appears to be a similar, if not identical, audit process. *See* 2016 WL 3536710 (D. Del. June 28, 2016). In *Temple-Inland*, Judge Sleet held that Defendants violated a company's due process rights by waiting several years to conduct an audit, exploiting loopholes in the statute of limitations, providing improper notice to the plaintiffs, employing an unsound method of estimation, and subjecting the plaintiffs to multiple liability. *See id.* at *16 ("To put the matter gently, defendants have engaged in a game of 'gotcha' that shocks the conscience."). While the underlying facts here differ from those in *Temple-Inland*, Plaintiffs are involved in a process sufficiently similar to the one in which the *Temple-Inland* plaintiff found itself as to make Judge Sleet's findings – that aspects of Delaware's escheat regime are "troubling" and "shock the conscience," 2016 WL 3536710, at *9 – a pertinent circumstance this Court must consider in assessing whether Plaintiffs are faced with a "real and substantial threat of harm." *NE Hub Partners*, 239 F.3d at 342 n.9. That a significant portion of Plaintiffs' operating funds are arguably encumbered by an escheat process that another judge of this Court has found has been used in a "shock[ing]" and unconstitutional manner strongly suggests that the parties' interests are adverse and the disputes presented by Plaintiffs are real.

Defendants contend that there is no real threat to Plaintiffs. Defendants assert that they are entitled to conduct an audit of Plaintiffs' financial records and also assert that they are not able to punish Plaintiffs without first allowing Plaintiffs to present a defense. These arguments ignore the real and detrimental effects of the audit process, the uncertainty regarding Plaintiffs'

operating funds, and the harm caused by the ongoing, and possibly unconstitutional, audit process. *See Sales Hydro Assocs.v. Maughan*, 985 F.2d 451, 453-54 (9th Cir. 1993) (explaining that burdensome process can constitute hardship sufficient for ripeness purposes). Plaintiffs adequately allege that the ongoing audit is imposing a hardship on them that can be remedied by a judicial declaration. *See Abbott Labs.*, 387 U.S. at 149 (noting factors that court should consider in evaluating ripeness, including "the fitness of the issues for judicial decision and the hardship to the parties of withholding court decision").

Plaintiffs' Complaint, which focuses on the audit process itself, also satisfies the "conclusiveness" prong of the ripeness inquiry. The question of conclusiveness hinges on whether the issues in dispute are purely legal, or whether further factual development would be useful. *See NE Hub*, 239 F.3d at 342 n.9. Plaintiffs' objections to Defendants' audit process ***are*** purely legal: Plaintiffs argue that Defendants' audit of non-Delaware entities is preempted by federal law and violates the Fourth Amendment. (*See* D.I. 38 at 2 ("Delaware lacks authority ***as a matter of law*** to claim 'address unknown' gift cards issued by two Ohio entities that did no business in Delaware during the audit period.")) If Plaintiffs' challenge were limited to the outcome of the audit, or to the inevitable escheatment of their property, then further factual development might be necessary. But that is not the claim Plaintiffs are pressing.

A decision in this case would be of substantial practical utility to the parties. If the Court concludes that Defendants' audit is preempted, because it relates to non-Delaware entities, or is unconstitutional, in violation of the Fourth Amendment, then the audit will have to stop. In that event, Plaintiffs' funds that are presently the subject of the audit would be unencumbered and the uncertainty surrounding Plaintiffs' operations would disappear. If, on the other hand, the Court

10

were to conclude that the audit is not preempted and does not violate the Fourth Amendment, then Plaintiffs' challenges to the process will have been resolved.

Subsequent to oral argument on Defendants' motion, another judge of this Court issued an opinion in *Plains All American Pipeline, L.P. v. Cook*.  There Judge Andrews dismissed as unripe claims by a Delaware entity against an escheat-related audit with which the plaintiff refused to comply.  *See Plains All Am. Pipeline, L.P. v. Cook*, 2016 WL 4414773, at *8 (D. Del. Aug. 16, 2016).  Having reviewed the parties' supplemental letter briefing (*see* D.I. 35, 36, 37, 38), the Court agrees with Plaintiffs that *Plains All American* does not support a conclusion that the instant dispute is unripe.

There are material distinctions between *Plains All American* and the case now before the Court.  *Plains All American* was a pre-audit and pre-enforcement action, not just (as here) a pre-enforcement action.  *See id.* at *5 ("In fact, the audit process – which may be followed by several stages of review – has hardly begun.").  Here, the audit is underway and has been ongoing for nine years.  (*See* D.I. 1 at ¶ 1)  In *Plains All American*, the plaintiff was primarily raising factual issues: whether and how Delaware would use an "estimation" to assess the plaintiff's liability.  *See id.* at *5 ("Plaintiff's claims are directed to the particular ways in which the audit may be conducted. . . .  These are not challenges to the audit process itself.").  Here, by contrast, as Plaintiffs write, "the alleged harm is the very audit process that is taking place now of 'address unknown' property of two Ohio entities [MPC and SPC] that did no business in Delaware during the audit period. 'It can hardly be doubted that a controversy sufficiently concrete for judicial review exists when the proceeding sought to be enjoined is already in progress.'"  (D.I. 36 at 1 (citing *NE Hub*, 239 F.3d at 343) (internal quotation marks omitted))  That is, Plaintiffs here

11

challenge the very institution of the audit itself, which presents a question of law (i.e., if the end

result – escheatment – is preempted, is the process leading to that result – audit – also

preempted?). Additionally, *Plains All American* involved numerous claims – such as substantive

due process and takings – that "would benefit greatly from a robust factual record." *Id.* at *6.[2]

But of the claims asserted in *Plains All American*, only preemption is also asserted here (and as

already noted the preemption issue here poses a question of law and is not focused on

estimation). Finally, in *Plains All American* the plaintiff did "not raise a constitutional challenge

to the Delaware Defendants' authority to undertake an audit." *Id.* at 8. Here, again, that is

precisely Plaintiffs' challenge.

   In sum, as the requirements for ripeness are satisfied, Plaintiffs' claims are ripe for

review. The Court now proceeds to undertake that review.

   **B.     Preemption**

   Plaintiffs' Complaint alleges that Defendants' audit "is preempted by federal common

law." (D.I. 1 ¶ 1) Specifically, Plaintiffs contend that the audit runs afoul of a trilogy of

Supreme Court cases ("the *Texas* trilogy") that establish a series of "priority rules" that are used

to disburse unclaimed or abandoned property to competing states. *See Delaware v. New York*,

507 U.S. 490, 500 (1993); *Pennsylvania v. New York*, 407 U.S. 206, 216 n.8 (1972); *Texas v.

New Jersey*, 379 U.S. 674 (1965). Defendants argue that the *Texas* trilogy does not preempt their

audit, or any eventual escheatment, because the cases apply only to disputes between two states,

_____

   [2]*See Plains All Am.*, 2016 WL at 4414773, at *7 ("Plaintiff's claims pertaining to the
Takings Clause, the Ex Post Facto Clause, preemption, vagueness, and – to a large extent –
substantive due process and procedural due process, all focus on the practice of 'estimation'
authorized by § 1155(a). . . . [T]he permissibility of estimation, in all of these contexts, hinges
on factual specifics.").

rather than to disputes between a private entity and a state. (*See* D.I. 22 at 10-13) Here, the dispute is between Plaintiffs, who are private entities, and the State of Delaware.

The Court agrees with Defendants, whose position has been endorsed by a decision of yet another judge of this Court. In an earlier phase of the *Temple-Inland* case, Judge Robinson explained:

> The court finds that, consistent with the stated purpose of the priority scheme in *Delaware* to "resolve disputes among States," the *Texas Cases* apply to disputes among States, not to disputes between private parties and States. . . . [S]uch a finding is in accord with a number of state court opinions addressing the applicability of the *Texas Cases*. Moreover, finding that the Supreme Court's holding in *Delaware* preempts the State's valid exercise of regulatory power over abandoned property would be contrary to the well-established principle that federal courts may not ordinarily displace state law.

*Temple-Inland, Inc. v. Cook*, 82 F. Supp. 3d 539, 549-50 (D. Del. 2015) (internal citations omitted).

The Court agrees with the reasoning articulated in *Temple-Inland* and does not see any reason why this case calls for a different analysis.[3] Applying that reasoning here, it follows that

---

[3]Plaintiffs rely on the Third Circuit's decision in *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 392 (3d Cir. 2012), in which the Court held that the *Texas* trilogy preempted New Jersey's attempt to override aspects of the priority scheme set out by the Supreme Court. (*See* D.I. 27 at 14-16) However, in that case there were no allegations of fraud, whereas here Defendants suggest that Plaintiffs may be fraudulently using non-Delaware special purpose entities to remove from Delaware entities property that would otherwise be subject to escheat in Delaware. (*See* Tr. at 33, 38-39) That New Jersey's hierarchy of priorities was found to be preempted does not compel a conclusion that Defendants' challenged conduct here is also preempted. (*See id.* at 59-61)

Plaintiffs have failed to state a plausible preemption claim on which relief could be granted. Accordingly, the Court will grant Defendants' motion to dismiss Plaintiffs' preemption claims.[4]

### C.    Fourth Amendment

Plaintiffs allege that Defendants' audit constitutes an unreasonable search and seizure in violation of the Fourth Amendment. (D.I. 1 ¶ 4b ("The DUPL violates the Fourth Amendment protection against unlawful search and seizure by authorizing the State Escheator to search Plaintiffs' confidential, privileged and proprietary records without any reasonable basis . . . and without providing a procedure for pre-compliance review.")) The Court disagrees. Instead, as Defendants argue, the alleged actions do not constitute a search under the Fourth Amendment.

Plaintiffs fail to state a plausible claim for a violation of the Fourth Amendment because they do not allege that they are required to cooperate with the audit. To the contrary, Plaintiffs affirmatively assert that Defendants do not have the authority to issue a summons or take any other action to compel Plaintiffs to produce any of the requested documents or to compel Plaintiffs to cooperate with Defendants' requests for information. (D.I. 27 at 10-11 (explaining that "[t]he DUPL authorizes enforcement and/or challenges only of final determinations of liability, penalties and interest – *after* the audit is completed")) The fact that Defendants do not have authority to compel compliance means that Plaintiffs have not actually been the subject of a

---

[4]Plaintiffs contend that Judge Sleet's *Temple-Inland* opinion somehow undermined or altered Judge Robinson's preemption decision at an earlier stage of that case. (*See* D.I. 31 at 1) The Court disagrees. Instead, as Defendants write: "Judge Sleet's decision *does not* change Judge Robinson's dismissal of the *Temple-Inland* plaintiff's federal pre-emption claim." (D.I. 32 at 1)

14

search.  Indeed, Plaintiffs could simply ignore Defendants' demand for information.[5]  In this

sense, Defendants' request for documents resembles a police officer's request for permission to

search – an action that does not run afoul of the Fourth Amendment.  *See Illinois v. Rodriguez*,

497 U.S. 177, 181 (1990) ("The [Fourth Amendment] prohibition does not apply . . . to situations

in which voluntary consent has been obtained . . . from the individual whose property is searched

. . . .").[6]

Alternatively, even if Defendants' actions did constitute a search, judicial review of

administrative searches is "strictly limited."  *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347

F.3d 57, 64 (3d Cir. 2003) (internal quotation marks omitted); *see also United States v. Morton

Salt Co.*, 338 U.S. 632, 642 (1950).  An administrative document request survives constitutional

challenge if it is "within the authority of the [requesting] agency," "not . . . too indefinite," and

"reasonably relevant to the authorized inquiry."  *See Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 79 (3d

Cir. 2007) (internal quotation marks omitted); *Corrigan*, 347 F.3d at 64.  These requirements are

satisfied here (particularly given the Court's decision regarding preemption above).  *See Del.

Code Ann. tit. 12, § 1155 (2016) (authorizing State Escheator to "examine the records of any

---

[5]In their briefs, the parties reference a dispute in Delaware's Court of Chancery relating to whether Delaware's Attorney General may enforce a summons on behalf of the Auditor.  (*See* D.I. 27 at 11 n.4; D.I. 28 at 5)  Plaintiffs argue (both in this case and as amicus in the pending state case) that such authority does not exist, and that the audit process is toothless.  (*See, e.g.*, Tr. at 43)  Even if Plaintiffs are wrong, any enforcement mechanism would provide them with a chance to be heard and to contest the validity of the audit, meaning that they would have the opportunity to challenge the basis for the search before they would be required to comply with it.

[6]The Court's conclusion that Plaintiffs have not been subject to a search under the Fourth Amendment is not at odds with the Court's conclusion that Defendants' actions create a "real and immediate harm" for purposes of ripeness.  It is just that the real and immediate harms are not in the nature of being subjected to a search (but rather are the uncertainty with respect to the use of funds, threat of penalties, and the like that are discussed in the ripeness section of this opinion).

person or business association or organization to determine whether the person has complied with any provision of [Delaware's UPL]").  Thus, again, Defendants actions do not violate Plaintiffs' Fourth Amendment rights.

Accordingly, Plaintiffs have failed to state a claim for violation of the Fourth Amendment.

## V.   CONCLUSION

For the reasons provided above, the Court will grant Defendants' motion to dismiss for failure to state a claim.  An appropriate Order follows.